UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
**EDWARD MILLIGAN, JR.,**                                      :
                                                               :
               Plaintiff,            :
                                                               :   **MEMORANDUM DECISION AND**
       – against –                                :   **ORDER**
                                                               :
                                                               :   20-CV-4658 (AMD)
**COMMISSIONER OF SOCIAL SECURITY,**                           :
                                                               :
               Defendant.            :
                                                               :
-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

       The plaintiff challenges the Social Security Commissioner's decision that he was not disabled for the purpose of receiving benefits under Titles II and XVI of the Social Security Act. For the reasons explained below, I grant the plaintiff's motion for judgment on the pleadings, deny the Commissioner's cross-motion and remand the case for further proceedings.

## BACKGROUND

       On November 13, 2017, the plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning October 26, 2017, caused by diabetes, hypertension and venous insufficiency. (Tr. 22, 152-164.) The Social Security Administration ("SSA") denied his claim after initial review on January 31, 2018. (Tr. 74-87.) The plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on February 12, 2018. (Tr. 82-83.) ALJ Theodore W. Grippo held a hearing on April 2, 2019, at which a vocational expert and the plaintiff—who was represented by counsel—testified. (Tr. 38-59.)

       In a May 16, 2019 decision, the ALJ denied the plaintiff's claim for benefits. (Tr. 19-32.) After determining that the plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 26, 2017, ALJ Grippo found that while the plaintiff's hypertension

was "nonsevere," the plaintiff had the following severe impairments: diabetes mellitus and venous insufficiency.[1] (Tr. 26-27.) He then determined that none of these severe impairments met or equaled the severity of one of the listed impairments in the applicable Social Security regulations. (Tr. 27-28.) The ALJ concluded that the plaintiff had the residual functional capacity ("RFC") to perform light work, except that he could not "frequently stoop and crouch,"[2] and that he "require[d] a cane to ambulate." (Tr. 28.) Finally, the ALJ found that the plaintiff could perform his past relevant work as a security guard. (Tr. 31-32.) The Appeals Council denied the plaintiff's application for review on August 3, 2020. (Tr. 1-6.)

## STANDARD OF REVIEW

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). The court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). "[S]ubstantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,' '[w]here an error of law has been made that might have affected the disposition of the case,'" the court will not defer to the ALJ's determination. *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (quoting *Townley v.*

---

[1] The ALJ also found that while the claimant's height and weight indicated obesity, there was "no evidence to support the conclusion that the [plaintiff's] obesity cause[d] more than minimal functional limitations." (Tr. 27.)

[2] The ALJ appears to have made a typographical error, and stated in his decision that the plaintiff can "perform light work . . . except he can frequently stoop and crouch." (Tr. 28.)

*Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).  Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision."  *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## DISCUSSION

The plaintiff claims that the ALJ's RFC assessment was not supported by substantial evidence.  Specifically, the plaintiff argues that the ALJ improperly "replaced professional medical opinion with his lay interpretation of the objective evidence."  (ECF No. 15-1 at 11.)

The ALJ must assess a plaintiff's residual functional capacity "based on all the relevant evidence in the case record."  *Colegrove v. Comm'r of Soc. Sec.*, 399 F. Supp. 2d 185, 192 (W.D.N.Y. 2005) (citing 20 C.F.R. § 416.945(a)(1)).  The assessment must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  *Martinez v. Colvin*, 286 F. Supp. 3d 539, 544 (W.D.N.Y. 2017) (citation and quotation omitted).

Because the plaintiff's claim was filed after March 27, 2017, 20 C.F.R. § 404.1520c governs this case.  Pursuant to that rule, the ALJ considers five factors to determine whether a medical opinion is persuasive: (1) supportability; (2) consistency; (3) the source's relationship with the patient; (4) the source's specialty; and (5) "other factors that tend to support or contradict" the opinion.  20 C.F.R. §§ 404.1520c(c)(1)-(c)(5).  After considering these factors, the ALJ must articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the plaintiff's] case record."  *Id.* § 404.1520c(b).  The most important factors are supportability and consistency.  *Id.* § 404.1520c(b)(2).  While the ALJ is not required to explain his consideration of all five factors, he must discuss these two.  *Id.*

3

On the issue of supportability, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). As for consistency, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions," the regulations "still recognize the foundational nature of the observations of treating sources." *Shawn H. v. Comm'r of Soc. Sec.*, No. 19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (internal quotation marks and citation omitted).

In a January 2019 opinion, Dr. John C. Megarr, the plaintiff's treating physician, opined that the plaintiff would be "off task" more than 25% of the workday, could maintain attention and concentration for less than one hour before needing a break, would be absent from work more than four days a month, and could rarely lift or carry more than 10 pounds. (Tr. 339-40.) Dr. Megarr also opined that the plaintiff could sit, stand and walk for three hours in an eight-hour workday, and would require the options to sit or stand at will and to lie down or recline throughout the workday. (Tr. 340.) He concluded that the plaintiff would not need a cane or an assistive device to walk. (Tr. 340-41.)

ALJ Grippo concluded that Dr. Megarr's opinion was not persuasive because "it [was] not supported by any treatment notes from Dr. Megarr, Dr. Megarr did not support his opinion with any clinical findings but instead identified only diagnoses to support the assessed

4

limitations, and such an extreme opinion is inconsistent with the claimant's minimal objective findings on various other physical examinations."[3] (Tr. 31.) The ALJ also described Dr. Megarr's opinion as "poorly completed," citing the "Environmental Limitations" section; in that section, the doctor wrote that the plaintiff should never be exposed to "Other (write in)," but did not write anything in the space provided. (Tr. 31, 342.)

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). Accordingly, an ALJ "must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks and citation omitted). "Whether the ALJ has met his duty to develop the record is a threshold question." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261-62 (S.D.N.Y. 2016). An ALJ is obligated to request missing information from a physician when he "is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed," or where there is a "clear gap" in the record. *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010) (citations omitted). The ALJ held open the record after the hearing for a week so that the plaintiff could obtain and submit Dr. Megarr's records (Tr. 23), but it is "[t]he ALJ's affirmative duty to develop the record . . . even when the claimant is represented by counsel." *Klemens v. Berryhill*, 703 F. App'x 35, 36 (2d Cir. 2017) (summary order) (internal quotation marks and citation omitted). On remand, the ALJ should request Dr. Megarr's records, and ask the doctor to fill in any gaps in his opinion.

---

[3] The ALJ determined that "even if Dr. Megarr's treatment notes had been timely submitted, . . . Dr. Megarr indicated he started seeing the [plaintiff] on December 14, 2018, so there would be minimal treatment to corroborate such opinion." (Tr. 31.)

5

The ALJ also considered a December 2017 report by Dr. Cheryl Archbald, an internal medicine consultative examiner. Dr. Archbald opined that the plaintiff had "mild limitations with walking" and "mild limitations for bending." (Tr. 314.) She noted that the plaintiff walked "with a mild limp," but had "a reduced limp" when he used a cane; she concluded that the "cane appear[ed] to provide him with support and appear[ed] to be medically necessary." (Tr. 313.) ALJ Grippo found the examiner's opinion "somewhat persuasive as it was supported by a detailed examination of the claimant, which was used to justify the assessed limitations, and it is consistent with the examiner's examination of the claimant as well as the numerous other physical examinations" in the record, "and the claimant's minimal treatment and complaints." (Tr. 30.) The ALJ acknowledged that Dr. Archbald did not specify for how long the plaintiff could walk or bend. (*Id.*)

Based on "the objective medical evidence, the inconsistencies [that the ALJ] noted, the internal medicine consultative examiner's assessment, and the claimant's treatment history," ALJ Grippo determined that the plaintiff could perform light work, except that he could not "frequently stoop and crouch" and "require[d] a cane to ambulate."[4] (Tr. 28-31.)

ALJ Grippo summarized the medical evidence in the record, and concluded that the "facts support finding some limitations in the claimant's functioning but no more than those assessed" in his decision, "and not to the extent the [plaintiff] has alleged." (Tr. 30.) He also found that Dr. Megarr's opinion was "inconsistent with the claimant's minimal objective findings on various other physical examinations." (Tr. 31.) However, the ALJ did not explain

---

[4] Under the Social Security regulations, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

6

how he reached this conclusion. This is significant, because not all of the plaintiff's physical examinations and test results were normal. For example, in February 2018, the plaintiff's primary care provider referred him to a vascular surgeon after the plaintiff complained of shortness of breath when he walked for more than two blocks. (Tr. 357, 360.) Moreover, the plaintiff's echocardiogram showed a mild ventricular hypertrophy and a left ventricular ejection fraction of 57%. (Tr. 29, 391.) In an April 2018 consultation with a vascular surgeon, the plaintiff stated that he had "pain in [his] left leg" for "awhile," and had to rest after walking one and a half blocks. (Tr. 363.) The vascular surgeon found mild edema throughout the plaintiff's lower extremity, and advised the plaintiff to elevate his leg and purchase compression stockings for his leg swelling. (*Id.*) Shortly thereafter, the plaintiff returned to his primary care provider, who determined that the plaintiff had "pedal edema," which is swelling of the feet and lower legs. (Tr. 368.) A home care nurse who evaluated the plaintiff in October 2018 determined that he needed assistance with bathing, dressing, transferring, mobility and walking, and could not cook, shop, housekeep or do laundry. (Tr. 399.) The nurse also concluded that the plaintiff fatigued easily, and used a wheelchair and a cane. (*Id.*) Despite these findings, ALJ Grippo concluded from the report that the plaintiff's "examination was entirely normal but that the [plaintiff] should use an assistive device while ambulating."[5] (Tr. 30.)

      In concluding that the "facts support finding some limitations in the claimant's functioning but no more than those assessed" in his decision (Tr. 30), the ALJ did not explain how he reconciled the medical evidence, or why the evidence supported only the specific limitations he found. Indeed, ALJ Grippo appears to have "cherry picked treatment notes that

---

[5] The plaintiff does not challenge the ALJ's evaluation of his subjective symptoms, which were consistent with Dr. Megarr's opinion: the plaintiff said that he was easily fatigued, had sharp pains in his lower extremities, could not stand or walk for long, and could walk only a half block to one block before having to stop and rest for 15 minutes. (Tr. 45-55.)

7

supported his RFC determination," and ignored evidence concerning the plaintiff's leg pain that was consistent with Dr. Megarr's opinion. *Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *9 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul*, No. 20-CV-261, 2021 WL 2801138 (S.D.N.Y. July 6, 2021); *see also Velasquez v. Kijakazi*, No. 19-CV-9303, 2021 WL 4392986, at *27 (S.D.N.Y. Sept. 24, 2021) ("[M]ultiple district courts that have reviewed ALJ decisions under the new SSA regulations have remanded cases where the evidence supporting or consistent with a rejected medical opinion was ignored or mischaracterized.").

ALJ Grippo also cited Dr. Archbald's assessment that the plaintiff had "mild limitations with walking" and "mild limitations for bending." (Tr. 30.) However, "the Second Circuit has held that when compiling an RFC from the record, an ALJ may not rely on opinions that employ the terms 'moderate' and 'mild' absent additional information." *Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 487 (S.D.N.Y. 2018). As ALJ Grippo acknowledged in his decision, Dr. Archbald's assessment was "not specific as to the amount of time the claimant could walk or bend." (Tr. 30.) Indeed, Dr. Archbald's vague conclusion provides no support for ALJ Grippo's determination that the plaintiff could perform light work, which would require either "a good deal of walking or standing," or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b); *see Richardson v. Astrue*, No. 10-CV-9356, 2011 WL 2671557, at *12 (S.D.N.Y. July 8, 2011) (finding that doctor's vague conclusion that "[plaintiff's] ability to sit was 'mildly to moderately' impaired . . . provides no support for [the ALJ's] conclusion that [plaintiff] could perform sedentary work"), *report and recommendation adopted*, No. 10-CV-9356, 2011 WL 3477523 (S.D.N.Y. Aug. 8, 2011).

Moreover, there is no medical opinion or prior administrative finding that supports the ALJ's RFC determination. While "'an RFC determination is an issue reserved for the Commissioner, the ALJ is a layperson, and as such is not qualified to assess a claimant's RFC on the basis of bare medical findings.'" *Raymond M. v. Comm'r of Soc. Sec.*, No. 19-CV-1313, 2021 WL 706645, at * 4 (N.D.N.Y. Feb. 22, 2021) (quoting *Anderson v. Comm'r of Soc. Sec.*, No. 19-CV-464, 2020 WL 5593799, at *3 (W.D.N.Y. Sept. 18, 2020)). ALJ Grippo disregarded Dr. Megarr's opinion—the sole medical opinion in the record—as unsupported and inconsistent with the medical evidence, relied on Dr. Archbald's incomplete observations, as explained above, and concluded that the plaintiff could perform light work with certain limitations. "Because the ALJ rejected the only medical opinions related to [the plaintiff's functional limitations], the ALJ's evaluation of [his impairments] and the functional limitations resulting therefrom was the product of [his] lay judgment." *Anderson*, 2020 WL 5593799, at *4.[6]

Accordingly, on remand, the ALJ should reconsider whether the plaintiff can perform light work, developing the record further as necessary.

---

[6] The defendant argues that an ALJ need not rely on a medical opinion in assessing the RFC, where "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotation marks and citation omitted). However, in the cases that the defendant cites, the ALJ had the benefit of an extensive record. *See, e.g., Monroe*, 676 F. App'x at 8-9 (ALJ relied on well-documented and detailed treatment notes, including notes related to "mood, energy, [and] affect" and "social activities relevant to [the plaintiff's] functional capacity"); *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020) (ALJ relied on two consulting physician reports and treatment notes); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (ALJ relied on "extensive" and "voluminous" medical record).

9

## CONCLUSION

For these reasons, this case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

                                                                s/Ann M. Donnelly
                                                 _____
                                                 ANN M. DONNELLY
                                               United States District Judge

Dated: Brooklyn, New York
        March 9, 2022